UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 16         4611**

------------------------------------------------------------X

MYKEL ISBELL, and MYKEL ISBELL as administrator
for the Estate of JEAN ISBELL

GARAUFIS, J.

Plaintiffs,

**VERIFIED COMPLAINT** SCANLON, M.J.

-against-

Index No.

RONALD G. CHILDRESS, and INTELLIPROPS INC.

[Jury Trial Demanded]

Defendants.

------------------------------------------------------------X

Plaintiff, MYKEL ISBELL, by and through her attorney, COURTNEY K. DAVY, ESQ., hereby alleges as follows:

## THE PARTIES

1. That at all times hereinafter mentioned, Plaintiff MYKEL ISBELL (hereinafter referred to as "Mykel") was and is a resident of Kings County, City and State of New York

2. That at all times hereinafter mentioned, Plaintiff MYKEL ISBELL is the daughter of late JEAN ISBELL (hereinafter referred to as "Jean") and is the administrator of the Estate of JEAN ISBELL.

3. That at all times hereinafter mentioned, Defendant RONALD CHILDRESS (hereinafter referred to as "Mr. Childress") was and is a resident of Madison County, Huntsville, Alabama.

4. That at all times hereinafter mentioned, Defendant INTELLIPROPS INC. is a business entity duly organized and existing under the laws of the State of Alabama, with a primary place of business located in Madison County, Huntsville, Alabama.

5. That at all times hereinafter mentioned, based upon information and belief, Defendant RONALD CHILDRESS is the owner, founder, and/or proprietor of Defendant INTELLIPROPS INC.

6. Based upon information and belief, at all times hereinafter mentioned, Defendant INTELLIPROPS INC. was operated as the alter ego of Defendant RONALD CHILDRESS as Defendant RONALD CHILDRESS exercised full financial control over the company.

7. Upon information and belief, Defendant INTELLIPROPS INC. is not properly funded.

8. Upon information and belief, Defendant INTELLIPROPS INC. is part of a Ponzi scheme and was solely created for the purpose of perpetuating and carrying out the Ponzi scheme.

## STATEMENT

9. Defendants, INTELLIPROPS INC and RONALD CHILDRESS (hereinafter "Defendants") have been operating and perpetrating a series of fraudulent investments and Ponzi schemes, which they have used to induce individuals such as the Plaintiffs to invest hundreds of thousands of dollars with said Defendants. In reliance on the Defendants' representations, Plaintiffs have personally invested over $200,000.00 with the Defendants, which based on information and belief, the Defendants have not invested but instead have used as a line of credit for Defendant's personal use.

10. Based on information and belief, Defendants were never affiliated with any investment of any kind nor were they involved in the development or funding of any startup companies.

11. This is an action for fraud, securities fraud, conversion, breach of fiduciary duty, breach of contract, breach of good-faith and fair dealings, and an action to pierce the corporate veil. To cover up their schemes, Defendants provided multiple checks which were designed to give Plaintiffs the false impression that they were in fact receiving the promised returns on their money. However, prior to the Plaintiffs cashing said checks, Defendants would contact them and discourage them from cashing the checks and instead encourage them to reinvest upon the continued promise of above-market returns on said investments. Based on information and belief, none of the checks that Defendants provided were ever funded and to date, Plaintiffs have not received their initial investment or any return thereon.

12. In May of 2016, Plaintiffs' attorney attempted to get in contact with the Defendants in order to clarify the situation and get more information. During a conversation between Plaintiffs' counsel and Defendants, when asked to about whether the checks provided to Plaintiffs were ever funded, Defendants admitted to providing checks which they knew were unfunded and claimed to have "reallocated" Plaintiffs' money "back into the investment," an alleged action which was done without Plaintiffs' knowledge or consent. Additionally, Defendants provided a document baring a payment schedule which was solely created by the Defendants and which the Plaintiffs had no knowledge of and did not agree to. In an effort to further conceal their deceptive scheme, Defendants offered Plaintiffs 50,000 shares of INTELLIPROPS INC. stock without showing any documentation that the company had any worth or that the company was legally permitted to distribute said amount of shares. Furthermore, Defendants embezzled the rental income from a property belonging to Plaintiffs by exercising unauthorized control over the money and converting the money into their own

personal income. Accordingly, Defendants violated the provisions of New York General Business Law § 352-c, 15 U.S. Code § 78j, and §10b of the 1934 Securities Exchange Act.

13. Plaintiffs seek 1) investment repayment, 2) interest on investment, and 3) attorneys' fees and costs. To prevent recurrence of this conduct, Plaintiffs also seek 4) injunctive relief.

## JURISDICTION AND VENUE

14. Jurisdiction over the claims subject to this dispute arises under federal question jurisdiction 28 U.S.C. § 1331 since Defendants violated the provisions of 15 U.S.C § 78j.

15. Jurisdiction also arises under diversity of jurisdiction, 28 § 1332 (c)(1), since the parties to this lawsuit reside in different states and the amount in controversy exceeds $75,000USD.

16. Venue is proper in this court due to the fact that the Plaintiff MYKEL ISBELL resides in this jurisdiction. Additionally, the unfunded checks were sent into the State of New York to Plaintiff in furtherance of Defendants' fraud.

## ALLEGATIONS RELEVANT TO ALL CLAIMS

17. Based on information and belief, Mr. Childress is an accountant in the State of Alabama and the owner and/or sole shareholder of Defendant corporation INTELLIPROPS INC.

18. Sometime in 2008, Mr. Stanley Isbell (hereinafter referred to as "Stanley"), the brother of Jean, introduced Plaintiffs to the Defendants. Based on information and belief, Stanley utilized Defendants as his accountants and made various alleged investments with the Defendants.

19. Sometime in April 2008, Mykel gave Defendants $50,000, which Defendants represented was being invested in startup companies that would provide 20% returns on investors' capital.

20. In October of 2008, Defendants sent Mykel a check in the amount of $60,000 which purportedly represented payment for Mykel's investment along with the alleged return of 20% on said investment. However, Defendants discouraged Mykel from depositing the aforementioned check, along with all checks received from the Defendants thereafter, and instead used unfair sales tactics to pressure her to reinvest the purported $60,000. Defendants convinced Mykel that if she did not reinvest she would be losing out on opportunity and money as the rates being offered by Defendants' investments could not be duplicated in the market. Upon Defendants' representation, Mykel returned the $60,000 check to Defendants for reinvestment.

21. In April of 2009, Defendants issued a second check in the amount of $72,000 as supposed payment for Mykel's reinvestment. Upon continued inducement by Defendants, who again promised a 20% interest rate, Mykel did not cash said check and instead reinvested the $72,000.

22. Later that year, Defendants gave Mykel a third check in the amount of $86,400, which was supposed to represent the investment plus the interest accrued. Mykel was induced to reinvest this amount as well.

23. In May of 2010, Mykel received a fourth check in the amount of $103,680, which Defendants again encouraged her not to tender for deposit.

24. In 2010, Defendants alleged that due to the economy, business had slowed down, and as a result, the return on investments would drop from 20% to approximately 15%, a number

that was still substantially higher than what could otherwise be obtained in the market at said time. Based on information and belief, Defendants changed the interest rate to align with current market conditions in order to further deceive the Plaintiffs into thinking the investments were genuine.

25. In September 2010, Mykel reinvested her money with Defendants in the amount of $119,232 with an interest rate of 15%.

26. In November 2010, Mykel received two checks in the amount of $66,403.60, equaling a total of $132,807.20, which allegedly represented payment for the principal of Mykel's original investment plus the alleged interest accrued on said investment. After receiving the money, Mykel was led to believe that her investments with Defendants were being faithfully returned and thus she returned the checks to once again reinvest with Defendants. Said date was the last time that she received any payout from the investment.

27. With respect to Jean, sometime in September 2010, Jean invested an amount of $117,091.10 with Defendants after witnessing her daughter's, Mykel's, alleged success in her investments with Defendants.

28. Two years later, sometime in April 2012, after Jean requested her investment be returned, Defendants wrote to her claiming that due to economic conditions caused by "congress political play with the budget," funds generated by the investments had slowed to a trickle and thus it would be difficult to make the usual lump sum payout without severely affecting ongoing operations. Defendants promised that the future was still very positive and that experts were stating that the floodgates would reopen again after the 2012 election.

29. In that same letter from April of 2012, Defendants made mention to a loan notwithstanding the fact that Plaintiffs never entered into any loan agreement with Defendants

and were instead lead to believe that they were making investments into small start-up companies which would pay great returns on Plaintiff's investments.

30. In fact, in a letter addressed to Plaintiff's attorney dated March 25, 2016, it appears that Defendants took it upon themselves to structure Plaintiff's investment as a loan as they state in said letter, "Mony (sic) received from Ms Isbell was structured as a loan... It was structured as a loan to insulate Ms. Isbell from losses should returns slow do (sic) to market conditions."

31. Additionally, in the aforementioned letter, Defendants state, "Enclosed you'll find documents of promissory notes between myself and Jean." However, Jean never entered into any loan agreement with Defendants and did not sign any promissory notes regarding the same. The purported promissory notes that Defendants provided bore only the signature of Defendants and not the signature of Jean.

32. On or about March 4th 2016, Plaintiff's attorney reached out to Defendants regarding money owed to the Plaintiffs in connection to the above referenced investments.

33. Defendants indicated to Plaintiff's attorney that they were in the middle of a busy tax season and promised that they would provide Plaintiff's attorney information sometime later in March.

34. In two letters addressed to Plaintiff's attorney respectively dated March 25th and May 23rd of the year 2016, Defendants claimed that Jean had provided them a loan in the amount of $117,091.00 and that Jean had allowed Defendants to restructure said loan due to the slowing of cash flow from their investment.

35. However, according to the Plaintiffs, there had never been any agreement between them and Defendants with respect to any loan – all funds given to the Defendants were for the purposes of investment.

36. In the May 23, 2016 letter, Defendant himself is not clear as he referred to the money received from Jean Isbell as both a loan as well as an investment, stating, "the initial loan did not yield any return on investment due to economic constraints."

37. Additionally, within the same letter, Defendants offered Plaintiffs "50,000 shares of Intelliprop Inc. stock, redeemable three years from now" in order to "preserve value of any interest forgone in the past."

38. However, based upon information and belief, Defendant's company INTELLIPROPS INC. is not publically traded and there is no existing record to show that Defendant's company has any worth nor any documents showing that Intelliprops Inc. is legally eligible to distribute 50,000 shares.

39. Furthermore, in regards to the company Defendant INTELLIPROPS INC., Defendant Mr. Childress has signed and issued several corporate checks to Mykel bearing the insignia of INTELLIPROPS INC. Based upon information and belief, Mr. Childress is the sole proprietor of said company and has created the company in order to lure investors, scheme them of money, and then use the company to shield himself from liability.

40. On June 29th, 2016 Plaintiff's attorney sent a letter to Defendants requesting further information about Plaintiff's money, including information about any investments that were made and proof that the checks issued by Defendants to Mykel had in fact been funded.

41. In a telephone conversation with Defendants, Defendants admitted to Plaintiff's attorney that two checks each in the amount of $66,403.60 (bearing check numbers #1094 and

#1095) that had been issued to Mykel had not been funded and that the funds were "reallocated back into the investment prior to the checks being sent out." When asked what was meant by the funds being reallocated, Defendants claimed that they would provide Plaintiff's attorney with an explanation in writing. However, to date, Plaintiff's attorney has received no such letter with the proposed explanation.

42. In fact, as Defendants encouraged Mykel not to deposit but instead to reinvest every check that was sent to her since 2008, there is no proof that the checks Defendants have been sending Mykel over the years were ever funded. Based upon information and belief, Defendants sent those checks and then encouraged a return of those checks in an effort to conceal their fraud and in furtherance of their Ponzi scheme.

43. Based upon information and belief, Defendants used Plaintiffs' money as a personal line of credit and have never invested any of the money received from the Plaintiffs. Defendants, although they made Plaintiffs believe that they were indeed investing the money into start-up companies, have provided no proof or documentation that Plaintiffs' money was invested anywhere. Defendants have not provided the names of the companies that were invested into nor the amount of money that was invested into each company even after Mykel, via her attorney, specifically requested said information.

44. In addition, Plaintiff's uncle, Stanley Isbell, died sometime in the year 2009 and in his will bequeathed to Jean a property that is located in the State of Alabama.

45. At Defendants' instructions, Jean entrusted said property to them to manage. However, based upon information and belief, Defendants rented the property and have been misappropriating the rental income.

46. Defendants have not provided any accounting of the rent collected from the property and have not provided any explanation as to where the funds from said property are being utilized.

47. Thus, Defendants have embezzled not only the funds generated from the investments that Plaintiffs made with them, but also the rental income from the property that Plaintiffs entrusted in their care.

## AS FOR THE FIRST CAUSE OF ACTION- BREACH OF CONTRACT

48. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

49. Plaintiffs invested over $200,000 with Defendants.

50. Defendants promised to repay the principal of the investments along with the interest of 20%, which was later reduced to 15% in the year 2010.

51. However, Defendants did not repay the principal or any interest on the aforementioned investments.

52. Defendants breached contract as they initially informed Plaintiffs that they were investing into start-up companies, however, based upon information and belief, Defendants used Plaintiffs' money for their own personal gain and never invested the money anywhere.

53. As a result of Defendants' breach, Plaintiffs have been damaged.

## AS AND FOR THE SECOND CAUSE OF ACTION- BREACH OF FIDUCIARY DUTY

54. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

55. Plaintiffs invested money with Defendants and thus Defendants owed a fiduciary duty to act in good faith in Plaintiffs' interest.

56. Defendants breached fiduciary duty by making numerous misrepresentations to Plaintiffs. Defendants represented that Plaintiffs' money was an investment and later claimed

that it was a loan. Defendants also misappropriated Plaintiffs' money by using it as a personal line of credit instead of investing it. Furthermore, Defendants misrepresented in that they changed the payment schedule of the investment on multiple occasions, without Plaintiffs' knowledge or consent.

57. As a result of Defendants' breach of fiduciary duty, Plaintiffs have been damaged.

### AS AND FOR THE THIRD CAUSE OF ACTION- FRAUD

58. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

59. Defendants intentionally made numerous, fraudulent, deceitful misrepresentations to Plaintiffs that they would receive 20% returns on investments in start-up companies in order to induce Plaintiffs to invest in their Ponzi scheme. Defendants made this representation despite Defendants' knowledge that there existed no said investments or start-up companies.

60. Defendants used Plaintiffs' investments as their personal line of credit, and in furtherance of said fraud, sent Plaintiffs checks that were not funded. Furthermore, in their attempts to conceal their fraud, Defendants convinced Plaintiffs not to cash said checks and instead reinvest the money into said fictitious scheme.

61. Plaintiffs relied on Defendants' representation that they were investing in actual companies and suffered damages as a result.

### AS AND FOR THE FOURTH CAUSE OF ACTION- SECURITIES FRAUD

62. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

63. Defendants induced Plaintiffs to invest money in their Ponzi scheme on the misrepresentation that Plaintiffs were investing in start-up companies and would be receiving a 20% return on their investments.

64. Plaintiffs invested with Defendants and were damaged in a sum over $200,000.

65. In furtherance of their fraud, Defendants offered Plaintiffs 50,000 shares of their company INTELLIPROPS INC. under the false pretense that said company was properly funded, publically traded, and that said stocks were of value.

66. As a result of Defendants' continued fraud and various attempts to conceal the fraud, Plaintiffs have been damaged.

## AS AND FOR THE FIFTH CAUSE OF ACTION- PIERCING THE CORPORATE VEIL

67. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

68. Based upon information and belief, Defendant INTELLIPROPS INC. is operated as the alter ego of Defendant RONALD CHILDRESS in that Mr. Childress exercises complete control and dominion over the finances, policy, and business practices of Defendant INTELLIPROPS INC. so that Defendant INTELLIPROPS INC. had no separate existence of its own.

69. Mr. Childress has comingled his personal finances with Defendant INTELLIPROPS INC.'s finances.

70. Furthermore, there is no evidence to indicate that Defendant INTELLIPROPS INC. has proper funding to back its existence. In fact, based upon information and belief, INTELLIPROPS INC. has no legitimate business and was instead created as part of a Ponzi scheme for the sole purpose of luring investors with the promise of high interest rates.

71. Based upon information and belief, Defendant RONALD CHILDRESS created INTELLIPROPS INC. to shield him from liability.

72. Because Defendant RONALD CHILDRESS exercised full control over Defendant INTELLIPROPS INC. and because Defendant RONALD CHILDRESS used Defendant INTELLIPROPS INC. to perpetrate fraudulent financial activities, the corporate

entity should be disregarded and Defendants should be treated as one and the same for the purposes of liabilities incurred.

## AS AND FOR THE SIXTH CAUSE OF ACTION- BREACH OF GOOD-FAITH AND FAIR DEALINGS

73. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

74. Defendants owed Plaintiffs a duty to act in good faith and fair dealing in the proposed investment and to not defraud the Plaintiffs. Defendants breached this duty by having Plaintiffs invest in a fictitious and Ponzi scheme. As a result of Plaintiffs' breach of good faith and fair dealings, the Plaintiffs have been damaged.

## AS AND FOR THE SEVENTH CAUSE OF ACTION- CONVERSION

75. Plaintiffs repeat and re-allege each and every paragraph as if set forth herein.

76. Plaintiff Jean Isbell inherited property in the State of Alabama from her deceased brother's Estate. Plaintiff, at the advice of Defendants, entrusted this property to Defendants for them to manage.

77. Based upon information and belief, Defendants rented the property out and have been collecting income from the property, which the Plaintiffs are entitled to.

78. Based upon information and belief, Defendants have exercised unauthorized control over the rental money and have converted it into their own personal income.

79. As a result of Defendants' conversion, Plaintiffs have been damaged.

W H E R E F O R E, Plaintiffs respectfully request that this Court:

(a) award Plaintiffs the relief requested in connection with the First Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(b) award Plaintiffs the relief requested in connection with the Second Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(c) award Plaintiffs the relief requested in connection with the Third Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(d) award Plaintiffs the relief requested in connection with the Fourth Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(e) award Plaintiffs the relief requested in connection with the Fifth Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(f) award Plaintiffs the relief requested in connection with the Sixth Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(g) award Plaintiffs the relief requested in connection with the Seventh Cause of Action including, but not limited to, an award of damages in an amount to be determined at trial;

(h) award Plaintiffs loan repayment and interest on loan

(i) award Plaintiffs injunctive relief, as provided by law, and

(j) award Plaintiffs such other and further relief as this Court deems just and proper, including reasonable attorneys' fees and costs.

Dated: New York, New York
August 18th, 2016

Respectfully submitted

COURTNEY K. DAVY
305 Broadway, Suite 1400
New York, NY 10007
(212) 786-2331
(516) 850-1800
(347) 725-4211(Fax)
courtneydavy.esq@gmail.com

# INDIVIDUAL VERIFICATION

State of New York:

MYKEL ISBELL, the Plaintiff for the within action, affirms the following to be true under the penalties of perjury:

I am Plaintiff for the within action. I have read the annexed VERIFIED COMPLAINT, and know the contents thereof, and the same are true to my knowledge, except for those matters therein which are stated to be alleged upon information and belief, and as to those matters, I believe them to be true. My belief as to those matters therein not stated upon knowledge is based upon facts, records and other pertinent information contained in my files.

Dated: August 12, 2016
New York, New York

_____
MYKEL ISBELL

Sworn to before me this 12 day of August, 2016.

_____
Notary Public

COURTNEY K. DAVY
Notary Public, State of New York
No. 02DA6253896
Qualified in New York County
Commission Expires Jan. 9, 2016